Please proceed. Thank you, Your Honor. May it please the Court. Mark Perry for Comcast. I'd like to reserve three minutes, and I'll do my best not to repeat all you've heard for the last hour. Good. We look forward to that. I'd like to make two points, principal points. The first is that the McGill rule is not within the Savings Clause at all. And let's set the table with Epic Systems. Epic Systems has a section of the opinion, Part 2, that says, to begin with the Arbitration Act and the question of the Savings Clause. And the entire Section 2 of the Epic Systems opinion doesn't have to do with the NLRA. It's only the Savings Clause. And the Court tells us at page 1622, and this is a quote, the Savings Clause does not save defenses that target arbitration by name. Let's just stop there and read McGill, because the McGill court told us what its holding was. And this is at page 94 of the Pacific Third opinion. Quote, the waiver in a pre-dispute arbitration agreement of the right to seek public injunctive relief is invalid and unenforceable under California law. McGill targets arbitration by name. It does that at page 94. It does that at page 87, and it does that three other times in the opinion. In fact, the McGill rule has never been applied other than in the arbitration context. The only case the McGill court cited was Little, an arbitration case. The only cases in which it has been applied are the three cases now before the Court and the Roberts case, which is tagging along behind it in this Court. My friends on the other side, all of my friends on all these other sides cannot cite a single case in which the McGill rule has been applied outside of the arbitration context. Or I'm not sure that that's necessarily so. It may be that the only place where you've got a seriously contestable issue is in arbitration. Your Honor, therefore, that's where we are. We've got the cases. Well, Your Honor, two answers to that. One is, we put them, you know, we threw down this gauntlet and nobody cited a case. The second and more important one No, I understand that. That's entirely consistent with what I just said. Well, what the Kindred Nursing Court said in the Supreme Court, which involved a similar problem, right, is this rule targeted at arbitration or is it more general? And what the Supreme Court said is utterly fanciful contracts can't save a State law rule. In other words, if you can hypothesize a non-arbitration context, contract, that's not enough. That the supporter of the rule, the State or the plaintiff here, has to actually point to a real contract in the real world in which this has been applied. There are no contracts. This is a feature of consumer arbitration. This is a point that Justice Kagan made very eloquently in the dissent in Epic Systems, that this is a development of the Supreme Court's arbitration law that companies are putting these provisions in their arbitration clauses. And the reason for that, and this goes to a point that was made in the last argument, is that the Arbitration Act specifically protects with whom one decides to arbitrate, with whom. The Court has said that four times now, with whom. The Comcast Agreement says with whom. It says that the arbitrator, quote, and this is at page ER73, may award relief only in favor of the individual party seeking relief and may not award relief for or against anyone who is not a party. So that Comcast and its subscribers have agreed between themselves with whom the arbitration will be conducted. The McGill rule says that that agreement, which is not ambiguous, which is not confusing, which is not subject to dispute, will not be enforced as a matter of California law. Now, I also assume that if the contract were to say, you may bring suit for damages individually in a court of law with competent jurisdiction, but you may not seek an injunction. That would fall under the McGill rule. Is that correct? Well, McGill draws the distinction between the public injunction and injunctions generally, right? These claimants can still bring an injunctive claim for their own selves. Right, but if the contract says you cannot bring a suit for a public injunction in a court of law, I assume that that contract, that provision of the contract is invalid, correct? It may or may not be our contract. Wait, wait a minute. That may be valid? Your Honor, I think it would be. How can that possibly be valid? Excuse me, Your Honor, I misspoke. That provision that the Court has hypothesized would fall within the McGill rule. That is not the contract that Comcast has written with its subscribers in this case. I understand that, but you're saying that the McGill rule is targeting only arbitration, but it would certainly affect the contract that I have just described to you. And I'm not aware, Your Honor, of any company that has a contract of that sort. The plaintiffs haven't cited it. Well, it would be a very foolish company that would draft such a contract because the rule is so clear. Well, it's actually the opposite, Your Honor. It is the company's desire to move the claims into individual arbitration, bilateral arbitration, and narrow the scope to avoid the problem, for example, of conflicting injunctions. And this is a real point. What is the scope of injunctive relief? It's as broad as all equity. And in an arbitration, it's essentially unreviewable, so that the arbitrator can award whatever injunction he or she deems fit under the facts of the case. So a company can be subject to a disclosure requirement from the first arbitrator, a nondisclosure requirement from the second arbitrator, a restitution requirement from the third, nothing at all from the fourth, and so on. In the last argument we heard you then respond to the – and I understand you've public injunction says stop. And the injunctions that you just hypothesized are all affirmative injunctions. So tell me what we're likely to be getting here in these public injunctions where the suit is brought against the company alleging, say, misrepresentation. I think it depends on the allegations in the case. I think it's overly simplistic to say stop. That is a form of injunction. In the Comcast case, the allegation is that there are misrepresentations regarding certain charges for cable services. The requested injunction is to remove the disclosure – the representation, add an affirmative disclosure, and stop charging the money, which they – which the plaintiffs allege is millions and millions of dollars. So it is not just a stop injunction. It is a reconfigure-your-business-practices injunction. And, of course, two different claimants with two different arbitrators could – could ask for and receive different injunctions. And a company could be subject to conflicting obligations, and it's no answer to – we just heard a little while ago the answer to that would be intervention. Well, intervention means collective proceedings. And the whole purpose of Concepcion and Epic Systems is to avoid that. Our contract, the Comcast contract, prohibits the arbitrator from consolidating one or more claims. So it cannot be done. What Comcast has requested and what the subscribers have agreed to by not opting out of their agreements is individualized proceedings, so that you can get an injunction that says, stop charging me. Now, of course, in that individual case, you would have in Federal court the problem that monetary relief is almost certainly adequate to remedy these things, so you wouldn't have an injunction at all. And this is a big distinction between private injunctions and public injunctions. Of course, arbitrators can issue injunctions if authorized by the parties. But in individual cases, they will rarely need to, because they will be able to fashion legal relief or non-prospective relief that will fully satisfy the claims put forward in the individual case. And remember, these are streamlined proceedings. These are designed to move consumer disputes quickly through the dispute resolution and get them resolved on an individual basis. That's what Epic Systems and Concepcion say. I want to ask you about the opt-out clause, which was a focus of the briefing, and you suggest that that actually provides a very neat and tidy means to avoid the McGill situation. But under California State cases, which look at comparable private attorney general situation, that doesn't solve the problem. So why is it, in your view, that the opt-out clause is the be-all and fix-all? So there's a significant distinction between the McGill rule and the Ascanian rule, as articulated by the California Supreme Court, and it is this. The McGill rule says, thou shalt not waive public injunctive relief, quote, in any forum. And the Ascanian rule, which deals with the waiver of PAGA claims, does not have that in any forum language. And so the McGill rule, the intersection then with the opt-out clause in the Comcast agreement is, a Comcast subscriber who wishes to maintain the right to bring public injunctive relief simply can opt out of the subscriber of the arbitration clause and bring those claims in court. And this case, this lawsuit is like a law school examination, Your Honor. Two of our plaintiffs actually opted out, actually amended their complaint to bring public injunctive relief claims, and were allowed to proceed. So this isn't a hypothetical. This is a real thing that happens in the real world. That's not true in the PAGA situation, right? That in any forum provision doesn't apply. That's why those state law cases that deal only with PAGA and this court's Uber case that deals with that doesn't have anything to do with the opt-out clause here. The only court that's addressed the opt-out clause in the Comcast agreement was the Trout District Court decision, which we cite, which agreed with Comcast that the opt-out provision, you know, moves McGill to the side. So that it provides the either or, a subscriber may choose to stick with the arbitration, take an individual resolution, or opt out of arbitration and seek public injunctive relief. That is completely consistent with McGill, Your Honor, and for this contract, solves the problem. Now, you know, does it raise it, you know, will there be continued disputes? You know, perhaps. But I think a clarification of that sort would be helpful. But so you don't view the either or option as tantamount to having waived with respect to the fact if you stay in arbitration? Well, you have waived it in arbitration, but you have not waived it, quote, in any forum. You have preserved the right to bring it in court. And, you know, you have taken the, you get the advantages of arbitration, too. You get, you know, Comcast pays your fees, it goes much faster. I mean, there are reasons for the subscribers not to opt out, as most of them do not, because arbitration provides a speedy and efficient resolution of consumer. I mean, this is a bilateral obligation. Judge McGill? Well, I want to make sure I understand. Are you, you, I believe you said, or that you're arguing that McGill specifically targets arbitration. That is our first argument, yes. So then, we've asked every other lawyer, let me ask you, on Sakab, then you I have a different answer on Sakab. Interesting. Sakab was wrongly decided when it was decided. It's a two-to-one decision. The dissent had it exactly right. This court can over, this panel can overrule it without taking it in bank under the well-established rationale that an intervening Supreme Court decision trumps. And here we have, look at Sakab. The most fundamental dispute in Sakab was whether concepcion was limited to class action procedures, that was the majority's view, or bilateralism, that was the dissent's view. And you can find those two concepts at page 436 in the majority and 444 in the dissent. This is the same debate, by the way, that you've been hearing for the last hour between the plaintiffs and the defendants in these cases. Of course, we get differing views on Sakab. One view is that, of course, Sakab controls and then that side wins. The other one is, well, we can get around Sakab. You don't need, it's consistent with the company's view. And now you're telling us, well, it's wrong. Well, look, look, Mr. Pincus distinguished it as better than I can, so why should I go over that ground again, right? But if you agree with the plaintiffs that it's indistinguishable, then the answer is it should not be extended. It should be overruled, because a wrong decision may stay on the books, but you shouldn't apply it to a new situation, because epic systems resolve the dispute between the majority and the plaintiffs. I want to understand that principle. It should stay on the books, but you shouldn't apply it? Well, it's a PAGA case, right? It's a PAGA case. And what Mr. Pincus said in, if I can summarize his argument, was PAGA is not public injunctive relief, right, for a variety of reasons. This Court doesn't need to reach out and overrule Sakab gratuitously. However, if the Court is persuaded by the plaintiff's argument that PAGA and public injunctive relief are the same, then we would have a PAGA preemption analysis, which is their basic submission. You know, we have every Supreme Court case of the last 30 years on our side, and they have Sakab on their side. I mean, that's really the weighing that's before the Court, right? That's actually fairly common. You've got the Supreme Court over there and the Ninth Circuit over here. No comment, Your Honor. Then we would submit that epic systems, again, to end where I began, epic systems resolve the point in favor of bilateralism. It said that what the FAA protects is an agreement to arbitrate individually. That is inconsistent with the McGill rule. It's also inconsistent with Sakab. Therefore, the Court should apply that and reverse in this case and in all the others. I'll reserve the time if I may. You may.  May it please the Court, Roger Heller on behalf of the appellees. I just want to point out first that none of the appellants here today have articulated any additional procedural complexity associated with the public injunctive remedy. And I think that's critical. I think I'm not going to spend a lot of time on Sakab because we have already today, but I think this is, you know, this is Sakab right down the line. I think, if anything, the distinctions actually cut the other way. In other words, the case against preemption is stronger in this case, if anything. And I think that's the case because with PAGA, and there was some discussion about this earlier, there are additional procedural complexities. There are additional procedures. You need a procedure to figure out how many people were harmed and to measure the harm in order to establish the monetary penalty under PAGA. That's not true with public injunctive claims. There's no additional procedural complexity. And with PAGA, there's actual monetary stakes. PAGA claims carry monetary damages. That wasn't enough to justify preemption in Sakab. Here, there's not. Here, we're talking about purely injunctive relief. EPIC does not change the situation at all. EPIC is a reaffirmation of the standards that were articulated in Concepcion. Those standards were faithfully applied by this Court in Sakab. And we would submit that if those standards are applied in this case, the same result as Sakab would be reached. Sotomayor, what about the scenario that's been discussed here regarding some sort of affirmative, not just a cease and desist, and for maybe a different period outside than what the class was identified or the period identified in some of these other actions? Well, in terms of the nature of the type of public injunction we would seek in this case, it's really, you know, stop falsely advertising the price of your cable packages. They can charge the fee that they're talking about if they actually are honest and don't lie about the price of their cable packages. If that's part of how they advertise it, there's no problem there. The type of public injunctive relief that you seek typically and the type of public injunctive relief that we're seeking in this case is stop a false advertising practice. Can be stop an unfair practice as well. In terms of EPIC, EPIC really just reaffirms Concepcion standards. EPIC and Concepcion are both class and collective cases. These cases that we're dealing with today are much more like the Ascanian cases, and they're distinguishable from the EPIC-Concepcion situation because we're dealing here with what are individual claims. I think that's a fundamental misunderstanding that the appellants here today have. These are individual claims. And an arbitration involving claims that seek the public injunction remedy is entirely bilateral. It doesn't bind any third parties due process. There's no third-party due process rights implicated. And the parties are entirely free to choose whatever procedures they wish to arbitrate claims, whether or not they include the public injunction remedy. In terms of just responding to a couple of points that were made by my colleague, he said that the McGill rule targeted arbitration by name, and he quoted some language from McGill itself. It's not so. The McGill rule on its face is something that applies to all private agreements. The language in McGill says, the arbitration agreement here. That's just simply because the contract in question in McGill was an arbitration agreement. And I think the answer to, you know, why are the only litigation that we're seeing involve arbitration agreements is for the reason that was mentioned. That's the only place where there are serious contesting of that issue. That's the only time that it's going to make its way up to the Court. The other point that I would make on this is that McGill doesn't just come from nowhere. McGill is grounded in Cal Civil Code 3513, which is unquestionably a generally applicable contract principle, has nothing to do with arbitration. It can and has been applied outside of the arbitration context many times. So I think that's a point worth making. And the last point that I would make on that is there's been no showing at all that this is the type of clause that shows up in a lot of arbitration agreements. In other words, there's no showing that there are McGill violations in a lot of arbitration agreements. Certainly nothing has been shown on that in this case. With respect to the opt-out clause issue, the whole point of McGill is that parties cannot consensually, by private agreement, agree to waive the right to pursue these remedies, right? The rights belong to the party, but they benefit in no appropriate way, or primarily to the benefit of the general public. And so it doesn't matter how many chances the private parties have at the outset not to enter into the agreement. What an opt-out right is, it's basically giving one of the parties the option to back out of the agreement at the beginning. But if they don't back out, then the parties continue to have that pre-dispute private agreement. And that's what violates California law. That's what's unenforceable under McGill, right? I think it's really important to keep in mind what McGill is and what it's not. It is not a prohibition on companies imposing something on their customers or depriving their customer of some right. It's a prohibition on the parties, generally, to a private agreement, entering into this sort of agreement. And an opt-out right gives, again, it gives the chance for one of the parties to back out. But if they don't do it, the parties have that agreement. And that's what's unenforceable. I think the cases that were mentioned earlier — Well, I mean, so what — maybe it's a linguistic difference, but you're just saying that if you have such an agreement and it hasn't been opted out, then it's not a valid agreement, which puts everybody back in as if they had opted out, correct? Well, that's only by virtue of the poison pill, because if the poison pill — Well, or by — by legal effect. By — by legal effect, right. In this situation, you have a provision that's unenforceable under McGill, and then you have a non-severability clause that says as a result of that provision being determined to be unenforceable, the entirety of the arbitration agreement goes away. If the poison pill is not there, the arbitration agreement continues to be enforced. So I think that's the — that would be the distinction there. The Iskanian cases that were mentioned earlier, I think they're directly on point. I think they translate directly. In every single one of those cases, the defendant said, yeah, I know we have a PAGO waiver in our contract, but we can't possibly be violating Iskanian because we gave everybody 30 days in the beginning to back out of that. And in every single one of the cases, the Court said, no, no, giving somebody the chance to opt out at the outset doesn't change the fact that this is a pre-dispute agreement, and so you're still violating Iskanian. The same exact thing is true here. The distinction is between a pre-dispute opt-out opportunity and a post-dispute opt-out opportunity. The McGill rule is a prohibition on pre-dispute waivers of these remedies. The Trout case is the only case that Comcast has to cite at all on this issue. The district court in Trout didn't do any analysis, and I think it bears mentioning that before the district court in Trout even got to the opt-out clause, it apparently had already determined that there was no McGill violation in the contract at all. So I think that — I think — I don't think Trout helps Comcast very much at all. I wanted to address a couple of other points that were made earlier, and unless Your Honors have questions, you know, there's — the McGill rule has absolutely no preference as to whether any of these claims or any claims at all get arbitrated or get litigated in court. And in that way, it's just like the Iskanian rule that was at issue in Saqqab. You know, there's — there's no additional procedural complexity whatsoever in — when we're talking about claims for the public injunction remedy. You know, the — if I bring an individual claim in arbitration against Comcast under the UCL and I seek a public injunction remedy, my arbitration with Comcast is entirely bilateral. And that's, I think, a fundamental difference that we have with all of the appellants in this case, is that that is an entirely bilateral proceeding. And so all of this talk about the FAA preserving individual proceedings, individual, you know, arbitrations or litigation, this is an individual proceeding. This is an individual claim. It's entirely bilateral. And that's true, notwithstanding the fact that members of the public could potentially stand to benefit from that relief. And that's consistent with what this Court said in Saqqab when it looked at PAGA claims and said, yeah, PAGA claims benefit other people, they benefit the public, lots of claims benefit other people, but it doesn't change the fact that it's bilateral. It's not binding on any third parties. The result is not enforceable by any third parties. It remains entirely bilateral. Unless there are any other questions. Thank you. Thank you, Your Honor. One quick point, if I may, Your Honors. My friend said that the parties remain, quote, entirely free, entirely free to select the arbitration procedures. The arbitration procedures in this case, they're at ER 73, say the arbitrator may not award relief for or against anyone who is not a party. We are not entirely free. The district court ruled that that provision violates California law, as articulated in McGill. The Epic Systems case from the Supreme Court of the United States, after that, says, quote, an agreement that a contract is unenforceable just because it requires bilateral arbitration, which ours does, is one that impermissibly disfavors arbitration. End of case, game over, reversed, we submit, Your Honor, on that basis alone. Thank you. Thank you. Thank both of you for the arguments. Tillage versus Comcast is submitted.
judges: McKeown, W. Fletcher, Murguia